# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| JAYLEN FRIER, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § CIVIL ACTION NO: 2:23-cv-00290 |
| | § |
| CHIEF OF POLICE JEFFREY HINGISS and | § |
| FORMER CHIEF OF POLICE JOSEPH | § |
| RIEDER, | § |
| | § |
| Defendants. | § |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, JAYLEN FRIER, by and through his Attorney, Attorney B'Ivory LaMarr, complaining of CHIEF OF POLICE JEFFREY HINGISS (hereinafter CHIEF HINGISS) and FORMER CHIEF OF POLICE JOSEPH RIEDER (hereinafter CHIEF RIEDER), individually and in their official capacities, files this Original Complaint and for cause of action would respectfully show the Court and the jury the following:

## PARTIES

1. Plaintiff JAYLEN FRIER is a citizen of the State of Wisconsin and a resident of Milwaukee County, Wisconsin. JAYLEN FRIER brings this cause of action individually for himself pursuant to 42 U.S.C. § 1983.

2. Defendant CHIEF HINGISS, a resident of Waukesha County, Wisconsin, was employed as the Chief of Police for the City of New Berlin Police Department since 2018.

In that capacity, he was the chief policy maker in the City of New Berlin Police Department at all times material hereto.

3. Defendant CHIEF RIEDER was the former Chief of Police for the City of New Berlin Police Department prior to CHIEF HINGISS. In that capacity, he was the former chief policy maker in the City of New Berlin Police Department at all times material hereto.

4. CHIEF HINGISS and CHIEF RIEDER are being sued individually and in their official capacity for the reasons set forth below.

5. The City of New Berlin Police Department (hereinafter New Berlin Police), is and was at all times relevant to this claim a City of New Berlin agency located in Waukesha County, Wisconsin that vetted and provided training to its officers whom the City of New Berlin fulfilled its policing functions.

6. City of New Berlin (hereinafter City), was at all times material hereto, a municipality, organized pursuant to Chapter 59 of the Wisconsin Statutes, with offices of the City Clerk located at 3805 S Casper Drive, New Berlin, WI 53151.

7. The City has a legal obligation under Wis. Stat. § 895.46 to satisfy any judgment entered against CHIEF HINGISS and the CHIEF RIEDER if it is determined that the said employees were acting within the scope of their employment at all times material hereto.

## JURISDICTION and VENUE

8. This Court has jurisdiction over Plaintiff's Constitutional claims for which redress is provided by 42 U.S.C. §§ 1983, 1988, and the Fourteenth Amendment. Jurisdiction of

this Court is further provided by 28 U.S.C. §1331, 1343 as this cause of action arises, in part, under the provisions of the United States Constitution.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the Eastern District of Wisconsin. Moreover, upon information and belief, all the Defendants reside in this Judicial District.

10. New Berlin Police where CHIEF HINGISS and CHIEF RIEDER function in their official capacities is located in Waukesha County. CHIEF HINGISS and CHIEF RIEDER are deemed to reside in the Eastern District of Wisconsin, Milwaukee Division and are subject to personal jurisdiction in this judicial district.

11. Venue is proper in the Milwaukee Division because all or a substantial part of the events and/or omissions giving rise to this claim occurred in Waukesha County, Wisconsin.

## BACKGROUND FACTS

12. On February 9, 2016, Officer Steven J. Dodson (hereinafter Officer Dodson) was involved in a one-car "property damage only" accident in the parking lot of the New Berlin Community Center. Officer Dodson was looking at an email message on his squad computer when he collided with a WE Energies light pole positioned in the middle of the parking lot of New Berlin Community Center.

13. Officer Dodson referred tohis decision to open an e-mail while operating the squad vehicle a "dumb decision."

14. Officer Dodson received a written warning for the February 9.2016 accident in violation of Department Rules, Directives, and/or Procedures, specifically Rule 1202.38,

"Operating and Care of Department Vehicles," in a letter dated February 24, 2016, prepared and signed by OFFICER RIEDER. See *Exhibit A*.

15. The February 24, 2016 letter further indicated that **"Any further violations of this nature will subject you (Officer Dodson) to more severe disciplinary actions, up to and including dismissal."**

16. On October 7, 2017, Officer Dodson was involved in his second accident in a squad car. On this occasion, Officer Dodson backed out of a driveway without paying attention to a vehicle behind him ran and ran directly into a parked car.

17. Officer Dodson, once again, received a written warning for violation of the same NBPD Directive. See *Exhibit B*.

18. Because Officer Dodson was not substantially disciplined by CHIEF RIEDER for his two previous violations, the Chiefs affirmatively acted to allow Officer Dodson to drive a department's squad again, thereby, creating a danger to the public and endangering the public safety.

19. Such dangers were further realized on August 28, 2020, at approximately 8:03 p.m., when Officer Dodson, for the third time, while on-duty, was again involved in a car accident.

20. The third accident was caused by Officer Dodson rear-ending the vehicle the Plaintiff JAYLEN FRIER was operating while being lawfully stopped at a stop sign at the intersection of Casper Drive and National Avenue in the City of New Berlin,

21. Officer Dodson recklessly drove the squad vehicle, was distracted, resulting in his squad vehicle to run directly into the back of the Plaintiff's vehicle causing disabling damage.

22. Officer Dodson, being a distracted driver, was manually operating (texting, dialing, playing game, etc.) an electronic device while driving the squad car.

23. This deprivation of JAYLEN FRIER's rights occurred by the affirmative acts of CHIEF HINGISS and CHIEF RIEDER, who were acting under the color of state law, in issuing only written warnings and otherwise providing their authorization to allow Officer Dodson, without further disciplinary action or training, despite the history and conduct known to them. [1]

24. The simple written warnings provided to Officer Dodson for his two previous violations created and enhanced JAYLEN FRIER's vulnerability to danger. The insufficient discipline and the lack of deterrence to Officer Dodson created the danger to JAYLEN FRIER, thus, depriving him of his right to substantive due process.

25. JAYLEN FRIER has suffered, and continues to suffer, damage to his person including, but not limited to, a concussion, traumatic brain injury resulting in migraine headaches, loss of sleep and mental anguish.

26. Likewise, JAYLEN FRIER has suffered loss of his property.

27. It was determined through a letter by CHIEF HINGISS dated December 8, 2020, attached hereto as *Exhibit C*, that Officer Dodson was again only served a **"Written Warning"** for violation of the same Department Rules, Directive and Procedure, for the accident that occurred on August 28, 2020, thereby making citizens, pedestrians and motorists, vulnerable again to danger on the roads and without warning.

*28.* It was also revealed that since 2014, other police officers of the New Berlin Police Department, namely, Officer Lofy, Officer Guevara, Officer Dreyer, Officer Greg Morris,

---

[1] D.S. v. E. Porter Cnty. Sch. Corp, 799 F.3d 793 (7th Cir. 2015)

Officer Harvey and Officer Saddy, were also served with simple written warnings for damage to a squad or violations of the New Berlin Department Directive 1202.38 "Operating and Care of Department Vehicles". See *Exhibit B*. Although Officer Guevara received a one (1) day suspension for a previous violation, the next violation by Officer Guevara was similarly addressed with a simple written warning.

**FIRST CAUSE OF ACTION AS TO VIOLATION OF**
**42 U.S.C § 1983 – STATE CREATED DANGER**

29. By its conduct, acting under color of state law, CHIEF HINGISS and CHIEF RIEDER are liable under 42 U.S.C § 1983 for violating JAYLEN FRIER's rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

30. It is the New Berlin Police's mission to protect the lives and property of the people they serve. It is the police department's vision to be regarded as a leader in law enforcement through commitment to professionalism, training, and community-oriented policing. [2]

31. The New Berlin Police, likewise, established directives and procedures that are followed when dealing with personnel complaints. As such, the department is committed to thoroughly, fairly and impartially investigating all personnel complaints. In addition, the department is committed to the fair administration of discipline or corrective action that is taken pursuant to a sustained personnel complaint. And, it will follow the disciplinary procedures outlined in the directive for both sworn and civilian employees.[3]

32. CHIEF HINGISS and CHIEF RIEDER had the duty to notify Officer Dodson on what Officer Dodson must do differently to avoid further discipline, and, as such, must

---

[2] NBPD Directives and Procedures/1. Organization and Management: 1101, Mission, Vision and Value Statement
[3] NBPD Directives and Procedures/4. Commendation/Disciplinary Procedures: 4201- Disciplinary System

proceed with sufficient discipline performance deficiencies, procedural complaints, and minor complaints continue to avail the public of a danger..

33. CHIEF HINGISS and CHIEF RIEDER tolerated the repeated infractions of the New Berlin Police Department Rules 1202.38 involving Officer Dodson that occurred on February 9, 2016, October 7, 2017 and August 28, 2020, by issuing simple written warnings as the only form of discipline.

34. The DEFENDANTS breached this duty by taking affirmative actions of simple written warnings which placed JAYLEN FRIER in a position of danger, effectively stripping him of the ability to protect himself against harm or damage to his person and property and placed him in an increasingly dangerous condition by not imposing the appropriate disciplinary measures to Officer Dodson for his repeated acts.

35. The DEFENDANTS-STATE ACTORS' conducted, created, or substantially contributed to the creation of, a danger and rendered plaintiff JAYLEN FRIER and other citizens more vulnerable to a danger that they otherwise would had been.[4]

**CHIEF HINGISS and CHIEF RIEDER'S Actions Created and Increased the Danger to JAYLEN FRIER**

36. In spite of the documented instances in Officer Dodson's personnel file of repeated squad accidents and violations of NBPD Directive 1202.38, "Operating and Care of Department Vehicles", CHIEF HINGISS affirmatively acted to serve yet another written warning, did not increase the severity or impose the appropriate disciplinary measures, and made the unilateral decision that Officer Dodson should remain in his same assignment setting without change.

---

[4] *Id.* D.S. v. E. Porter Cnty. Sch. Corp

37. CHIEF HINGISS and the CHIEF RIEDER affirmatively acted to undertake the improper form of discipline for Officer Dodson's repeated squad accident infractions to the prejudice of the safety of the City of New Berlin residents and the general public. They breached their duty through this failure by undertaking the affirmative acts of solely imposing "written warnings" in all three (3) squad accident infractions, of which the first two, placed JAYLEN FRIER in a position of danger by Officer Dodson's distracted and reckless driving.

38. CHIEF HINGISS and CHIEF RIEDER's sole issuance of "written warning" on the second squad accident of Officer Dodson turned this potential danger to a danger realized by the Plaintiff on August 28, 2020.

39. CHIEF HINGISS and the CHIEF RIEDER failed to protect JAYLEN FRIER from the ensuing danger that came from Officer Dodson's squad driving by imposing the insufficient and inappropriate disciplinary measures to Officer Dodson on his second infraction, and, as such, their failure was the proximate cause of the injuries sustained by JAYLEN FRIER.

40. The affirmative acts of CHIEF HINGISS and CHIEF RIEDER by intentionally providing written warnings despite asserting that it would increase the severity of future acts resulted in a known danger, that was well-documented in Officer Dodson's file, and is so egregious and culpable that it "shocks the conscience."

**CHIEF HINGISS and CHIEF RIEDER Acted with Deliberate Indifference**

41. CHIEF HINGISS and CHIEF RIEDER acted with deliberate indifference in that they knew Officer Dodson had violated in several instances NBPD Directive 1202.38.

42. CHIEF HINGISS and CHIEF RIEDER knowingly disregarded the risk to its citizens, motorists and pedestrians, including JAYLEN FRIER, who was in a position of danger having to drive on similar roads and areas where Officer Dodson was driving.

43. CHIEF HINGISS and CHIEF RIEDER's actions and failures were much more than a simple failure to perceive a risk to their citizens. They had actual knowledge of the violations by Officer Dodson and the potential harm that can be caused by Officer Dodson's constant violations of NBPD Directive 1202.38. They chose to impose the inappropriate form of discipline and failed to provide supervision and re-training for remedial and protective measures to ensure the safety of the citizens in light of repeated violations of the said Directive.

44. The repeated violation of NBPD Directive 1202.38 by Officer Dodson could have been easily prevented by simply imposing the appropriate form of discipline and by providing Officer Dodson and the New Berlin Police the proper supervision and re-training of "Operating and Care of Department Vehicles".

45. The above-described actions shock the conscience because they demonstrate more than deliberate indifference. They demonstrate a knowing acceptance of extreme risk of potential danger on the road, and affect the general public whom among those are individuals incapable of protecting themselves. Moreover, they demonstrate an affirmative unwillingness to take reasonable steps in implementing proven procedures in deterring or preventing such injury to its citizens and to their property.

**SECOND CAUSE OF ACTION AS TO VIOLATION OF
42 U.S.C § 1983 – *MONELL* CLAIM OF UNCONSTITUTIONAL PRACTICE**

46. Under *Monell,* a municipal entity may be liable for depriving a plaintiff of constitutional rights only if the entity caused the deprivation.[5]

47. The actions of CHIEF HINGISS and CHIEF RIEDER, as the chief policy makers of the New Berlin Police and authorized to act for the City, allowed violations of NBPD Directive 1202.38 (Operating and Care of Department Vehicles) to be met simply with written warnings despite several instances of violations of this NBPD Directive in the Department.

48. Previous violations by New Berlin Police's employees of NBPD Directive 1202.38 was sufficiently reported and documented. Accordingly, the following violations include but are not limited to the following enumeration of dates and disciplinary measures imposed: on January 14, 2014, Officer Lofy received a written warning for damage to a squad; on March 19, 2015, Officer Guevarra received a one (1) day suspension held in abeyance for damage to a squad as a result of an at fault accident; on October 26, 2015, Officer Guevarra received a written warning for damage to a squad; on April 22, 2016, Officer Dreyer received a written warning for damage to a squad; on February 9, 2016, Officer Dodson received a written warning for violation of NBPD Directive 1202.38; on October 2, 2016, Officer Greg Morris received a written warning for damage to a squad; on October 7, 2017, Officer Dodson received a written warning for violation of NBPD Directive 1202.38; on November 2, 2017, Officer Saddy received a written warning for damage to a squad; and on August 28, 2020, Officer Dodson received a written warning for violation of NBPD Directive 1202.38.

---

[5] 436 U.S. at 691-92

49. This pattern of actions by CHIEF HINGISS and CHIEF RIEDER by continually not taking the correct and proper form of discipline has ripened into a practice, a policy and has become the established norm for any personnel violation of NBPD Directive 1202.38 since 2014.

50. This is not based solely on allegation but is well documented in the New Berlin Police Departments' records *(Exhibit B)* and it is enough to draw a reasonable inference that the New Berlin Police maintained a policy, custom or practice that deprived JAYLEN FRIER and other citizens of their constitutional rights.[6]

51. It is evident that there was a series of constitutional injuries traceable to CHIEF HINGISS and CHIEF RIEDER's policy or custom of not substantially disciplining New Berlin Police officers' violation of the Department Directive. [7]

52. This deliberate conduct by CHIEF HINGISS and CHIEF RIEDER which ripened into a policy and a practice was the reason for having Officer Dodson stay on his assignment despite two violations of NBPD Directive 1202.38. Officer Dodson was still authorized to drive on August 28, 2020, when he, admittedly, a distracted driver, caused another squad accident for the third time.

53. This practice and policy allowed Officer Dodson to drive again and stay on his assignment without providing due regard to the safety of others.

54. Since that second instance of violation of Officer Dodson, JAYLEN FRIER has been deprived of safety and protection for his life and for his property.

---

[6] White v. City of Chi, 829 F.3d 837 (7th Cir. 2016)
[7] Glisson v. Ind. Dep't of Corr., 849 F.3d 372 (7th Cir. 2017)

55. CHIEF HINGISS and CHIEF RIEDER failed to see the danger of the affirmative actions they have turned into a practice and a policy within the New Berlin Police Department.

## THIRD CAUSE OF ACTION AS TO VIOLATION OF
## 42 U.S.C. §1983 – RATIFICATION

56. The subsequent actions by the CHIEF HINGISS and CHIEF RIEDER following the August 28, 2020 crash serve to establish that CHIEF HINGISS and CHIEF RIEDER approved and otherwise ratified the prior decisions which allowed Officer Dodson to continue to operate a police squad vehicle without corrective or disciplinary action in response to his two prior violations of Directive 1202.38.

57. Specifically, CHIEF HINGISS and CHIEF RIEDER failed to provide Officer Dodson with a measurable performance improvement plan to ensure specific improvement on the identified deficiencies and therefore failed to provide protective measures to pedestrians and other motorists.

58. Service of only a perfunctory "written warning" allowed Officer Dodson to continue to operate a motor vehicle without meaningfully addressing his demonstrated history of negligent operation of a motor vehicle.

59. In response to repeated violations of policy, there was no meaningful corrective or disciplinary action taken by CHIEF HINGISS and CHIEF RIEDER with regard to Officer Dodson who was simply allowed to continue to operate his squad car as if nothing had happened.

60. The failure to acknowledge the risks to pedestrians and motorists and failure to take meaningful corrective and disciplinary action following the August 28, 2020 crash are

evidence that the same policies which allowed Officer Dodson to remain behind the wheel remain the policy of CHIEF HINGISS and CHIEF RIEDER.

## DAMAGES

61. The preceding paragraphs are incorporated herein by reference as if set forth verbatim. Defendants are liable for Plaintiff's actual damages and compensatory damages, together with a statutory attorney's fees as 42 U.S.C § 1988 for all claims alleged pursuant to 42 U.S.C § 1983.

62. JAYLEN FRIER brings these causes of action for the traumatic brain injury (TBI), severe physical pain, sleepless nights, fatigue he suffered since the August 28, 2020 accident.

63. Likewise, JAYLEN FRIER, is under constant fear for his safety when he drives despite abiding with traffic rules and regulations due to the trauma he sustained from the accident, that even the law enforcement officers who are supposed to be the models in following laws, were the ones who violated it.

64. JAYLEN FRIER's fears were made worse when Officer Dodson's squad accident infraction on August 28, 2020 was simply met again with a "written warning" by CHIEF HINGISS.

65. JAYLEN FRIER endured this shocking policy and practice by the New Berlin Police and has since then caused anxiety and driving fears on him.

66. JAYLEN FRIER seeks damages in excess of $10,000,000.00.

## JURY DEMAND

Plaintiff JAYLEN FRIER hereby requests trial by jury.

## Prayer for Relief

WHEREFORE, the Plaintiff prays for an order of judgment entered in this Court against Defendants individually, jointly and severally for the reasons set out above in an amount to be determined by the trier of fact for actual, compensatory, punitive, special and other damages as follows:

a. Under 42 U.S.C 1983 – For actual, foreseeable, consequential, incidental, punitive, personal injury, pain and suffering, emotional and mental harm with permanency as a result of the violation of the 14th Amendment for deprivation of the right to life and property to the Plaintiff.

b. Under 42 U.S.C 1983 - For actual, foreseeable, consequential, incidental, punitive, personal injury, pain and suffering, emotional and mental harm with permanency as a result of the violation of the 14th Amendment for affirmatively creating a danger to the life and property which consequently resulted in harm to the Plaintiff.

c. Specifically, for special damages under Rule 9(g), in the form of punitive damages.

d. For costs associated with maintaining this action.

e. For reasonable attorney's fees as set out under 42 U.S.C. 1988.

f. For such other relief that this Court deems just and equitable.

Dated March 2, 2023

Respectfully submitted,

The LaMarr Firm, PLLC

*/s/ B'Ivory LaMarr*
B'Ivory LaMarr, Bar No. 1122469
The LaMarr Firm, PLLC
5718 Westheimer Rd
Suite 1000
Houston, TX 77057
Phone: (800) 679-4600
Email: blamarr@lamarrfirm.com
Attorney for Plaintiff